UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL JENNINGS                                                                                          PETITIONER

v.                                                                                    CIVIL ACTION NO. 3:06CV-P309-S

JAMES L. MORGAN, WARDEN                                                                        RESPONDENT

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of the objections of the petitioner, Michael Jennings, to the Findings of Fact, Conclusions of Law, and Recommendation (the "report") of the United States Magistrate Judge in this action brought under 28 U.S.C. § 2254.  The court need not restate the historical facts underlying this case in light of the well written and comprehensive report issued by the magistrate judge.  Jennings does not take issue with his rendition of the facts.[1]  Rather, he objects to the conclusion that the petition is untimely and the recommendation that the petition be dismissed.  This court has conducted a *de novo* review of those portions of the report to which objection has been made.  28 U.S.C. § 636(b)(1).

The defendant, James L. Morgan, Warden of the Northpoint Training Center, moved to dismiss the petition herein on the ground that the action is barred by the one-year statute of

---

[1]Jennings takes issue with one fact recited in the report.  At pg. 4 of the report, the magistrate judge states that "Jennings, with the assistance of counsel, next moved the trial court on July 16, 2004, for final sentencing pursuant to the requirements of KRS 640.030."  He urges that he did not have assistance of counsel at that time.  In support of this assertion, he provides a copy of a CourtNet printout which documents the filing of the motion in question on July 16, 2004.  In contrast to other entries, the entry does not indicate that the motion was filed *pro se*.  While this is not conclusive, it is, at present, the only evidence we have concerning this document.  The court has not been provided a copy of the actual motion.  Therefore, the court will reject the plaintiff's objection at this time, the magistrate judge's finding not having been shown to be clearly erroneous.  In any event, the finding is immaterial to this ruling.

limitations for habeas corpus petitions. 28 U.S.C. § 2244(d). Jennings, a youthful offender, pled guilty to two counts of murder and was sentenced to life in prison on June 1, 1995. On December 18, 1995 when he was 16 years old, Jennings was transferred into adult custody of the Department of Corrections by an agreed order in which he purportedly waived his rights and any procedures in connection with the transfer. Upon turning eighteen, Jennings was not returned to the sentencing court in accordance with KRS 640.030(2), apparently because of the previous transfer and waiver. In any event, Jennings moved for a 640.030 hearing on July 16, 2004. A hearing was held on June 23, 2005. Another judgment of conviction and sentence was entered on July 6, 2005 after the state court determined that probation with or without an alternative sentencing plan was inappropriate. Jennings was resentenced to the terms of his initial sentence. He did not attempt to appeal from the July 6, 2005 judgment, but rather filed this habeas corpus petition on June 22, 2006.

Under the scheme of the Kentucky Unified Juvenile Code, imprisonment of youthful offenders is subject to particular statutory guidelines. KRS 640.030[2] provided

> A youthful offender, if he is convicted of, or pleads guilty to, a felony offense in Circuit Court, shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult convicted of a felony offense, except that:
>
> ...
>
> (2) Any sentence imposed upon a youthful offender shall be served in a facility or program operated by the Cabinet for Human Resources until the expiration of the sentence, the youthful offender is paroled, the youthful offender is probated, or the youthful offender reaches the age of eighteen (18), whichever first occurs. If an individual sentenced as a youthful offender attains the age of eighteen (18) prior to the expiration of his sentence, and has not been probated or released on parole, that individual shall be returned to the sentencing court. At that time, the sentencing court shall make one (1) of the following determinations:
>
>> (a) whether the youthful offender shall be placed on probation or conditional discharge;

---

[2] The version of the statute in effect at the time of Jennings' 1995 sentencing.

> (b) whether the youthful offender shall be returned to the Cabinet for Human Resources to complete a treatment program, which treatment program shall not exceed a period in excess of six (6) months. At the conclusion of the treatment program or at the expiration of six (6) months, whichever first occurs, the individual shall be finally discharged; or
>
> (c) whether the youthful offender shall be incarcerated in an institution operated by the Department of Corrections.

As noted earlier, Jennings had been transferred to an adult facility when he was sixteen, presumably due to mental illness or behavior which rendered him a risk under the care of the Cabinet for Human Resources.[3] *See,* KRS 640.070. The records indicate that in March and April of 1995, a motion was made for "acute care and follow-up," and a probable cause hearing was held. It appears that Jennings was evaluated and/or treated at Our Lady of Peace Hospital in late 1992. While the copy of the discharge summary provided to the court has all content redacted, Jennings referred to this document in his motion to dismiss the indictment which he filed *pro se* on October 4, 2004. In that motion he stated that he

> was diagnosed by Dr. Robert R. O'Connor as suffering from "Dysthymic disorder" and "oppositional disorder" and that "he is a poorly organized, chronically anxious, emotionally constricted person, highly impulsive, who tends to act out without considering the consequences." It was also found that "he has some depression and a lot of anger and paranoia," and "does not respond to freedom of choice with good judgment."

Motion to Dismiss, pp. 10-11.

Jennings now contends, among other things, that his attorney permitted the December, 1995 transfer order to be entered without his consent. No challenges to any of the proceedings against him were raised prior to April of 1998. In any event, it appears that this order of transfer and waiver, consensual or not, was the reason for the lack of a 640.030 hearing upon Jennings' eighteenth birthday.

---

[3]The Cabinet for Human Resources is now the Department of Juvenile Justice.

Morgan has moved to dismiss the habeas petition as untimely inasmuch as it was not filed prior to April 24, 1997, the expiration of the one-year grace period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), for habeas petitions in cases where final judgment was entered prior to the effective date of the AEDPA.  He contends that the 1995 judgment, which was not subject to direct appeal, became final on the date it was rendered.

The magistrate judge concluded that the petition was indeed untimely inasmuch as, at the earliest, Jennings' first time-tolling post-conviction motion was not filed until April 27, 1998, over one year after the expiration of the grace period.  Jennings urges, however, that the 1995 judgment was not the final judgment in the case, since KRS 640.030 required the sentencing court to revisit the sentence upon the defendant attaining the age of eighteen.  Thus Jennings contends that final judgment was entered on July 6, 2005, the date the state court reaffirmed the judgment of conviction and sentence after the 640.030 hearing.

Jennings takes issue with the magistrate judge's conclusion.  He contends that his habeas petition was timely because it was filed within one year of the date on which the Kentucky trial court afforded him the procedure due him after turning eighteen.[4]  He urges that his 1995 conviction and sentence were essentially contingent, as they were subject to 640.030 review, and thus not final under Kentucky law.

This appears to be a matter of first impression in this Circuit with respect to the question of the finality, for purposes of applying the statute of limitations of the AEDPA, of a Kentucky circuit court judgment and sentence imposed upon a youthful offender under the scheme of the state's Unified Juvenile Code.  The existing federal caselaw in this area which was discussed at length by the magistrate judge is not directly on point, as the cases do not address the peculiarities of the

---

[4]The statute provides for filing within one year from the date the judgment becomes final in cases where judgment was rendered after the effective date of the AEDPA.

- 4 -

juvenile justice system and judgments rendered in that arena. Nor is the Kentucky authority cited by Jennings conclusive on this issue. This is a matter of federal procedural law. Therefore, federal caselaw controls. *See, Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 1993) and cases cited therein. However, the court is inclined to consider the state's characterization of the Kentucky Juvenile Code in ascertaining whether the magistrate judge's analogy to federal resentencing cases is sound.

Jennings relies upon the case of *Commonwealth v. Taylor*, 945 S.W.2d 420 (Ky. 1997) for the proposition that an initial sentencing of a youthful offender is not final. However, the *Taylor* decision does not make such a sweeping pronouncement. Rather, the holding in *Taylor* must be read in the context of the facts of the case. Taylor was sentenced as a "juvenile sex offender" pursuant to KRS 635.510 and committed to the custody of the Cabinet for Human Resources until he reached the age of twenty-one. The trial court stated at the initial sentencing hearing that, depending upon his performance in a sexual offender treatment program, he would either be released on probation or remanded to prison to serve the balance of his sentence. He was ordered to be returned to the trial court at the age of twenty-one pursuant to KRS 635.515(1). When he came back before the court, Taylor's excellent performance in the sexual offender program was noted and he was granted probation over the objection of the prosecutor. The Commonwealth appealed the trial court's order, arguing that due to the nature of Taylor's crimes, probation was prohibited by another (adult) statutory provision. Taylor urged that the Commonwealth could not appeal the probation decision because it failed to raise the issue at the initial sentencing. The Supreme Court of Kentucky permitted the appeal, stating that it was clear that the trial judge did not rule on the issue of probation at the initial hearing. The court stated that "'res judicata' cannot apply to issues which are not ruled on or are reserved by the court for future determination." *Id.* at 423.

Initially we note that the *Taylor* court was addressing a particular procedure for the treatment of individuals adjudicated "juvenile sex offenders" under the criteria set forth in KRS 635.510. Additionally, with respect to the question of finality, the court stated only that it agreed with the

proposition that the Commonwealth could not have appealed from an order which did not finally adjudicate the issue of probation. The court noted that finality on the issue of probation came when the court found Taylor eligible for probation and so ordered, not when it was mentioned at sentencing as a possible disposition after sex offender treatment. *Taylor does not* hold that judgement and sentence of a youthful offender is not final until after the offender attains the age of eighteen and revisits the sentencing court.

KRS 640.030 requires the sentencing court to take a "second look" at the manner in which a youthful offender is serving his sentence. Nothing in the statute renders the original judgment of conviction and sentence infirm. Rather the attainment of age eighteen triggers the requirement that the court ascertain whether the defendant is a candidate for probation or conditional discharge, or whether a treatment program or incarceration by the Kentucky Department of Corrections is warranted. We find the case of *Britt v. Commonwealth*, 965 S.W.2d 147 (Ky. 1998) to be supportive of our interpretation. The court in *Britt* discussed the evolution of KRS 635.020 establishing the criteria for determining how a child is to be tried. In exploring the history of this provision, the court referred to the procedures set out in KRS 640.030 and 640.040 as "ameliorative sentencing procedures," and noted that the purpose of the transfer statutes was "to permit the court to impose the same term of years upon a juvenile for which an adult would be liable, but to otherwise leave the circuit judge discretion to probate or conditionally discharge the juvenile, send the child for treatment, or send the child to the adult correctional system upon majority." *Id.* at 150. This articulation of the "ameliorative" purpose of the statutes supports our view that the judgment and sentence was final prior to the "second look" at Jennings' sentence.

We do not find the "second look" procedure to be a feature which prevents the analogy to be drawn between this and the resentencing cases. There is nothing about the procedures afforded youthful offenders which calls into question the finality of the judgment and sentence of the circuit court. Rather youthful offenders are afforded an additional mechanism by which the court revisits

the sentence and the current circumstances when the offender reaches the age of majority. Whether termed "resentencing," a term not utilized in the statute but employed by the circuit court judge in her 2005 order, or simply a review upon the attainment of majority, we find the analogy to the resentencing cases to be an appropriate one. We find the magistrate judge's analysis of the caselaw to be sound and affirm his conclusion and recommendation that the court follow the reasoning in the Eleventh Circuit case of *Rainey v. Secretary for the Department of Corrections*, 443 F.3d 1323 (11th Cir. 2006).

As noted by the magistrate judge, the issue in the *Rainey* case was "whether the district court properly found that a habeas corpus petitioner who was re-sentenced and who only challenged the original trial proceedings without raising any challenges based on re-sentencing procedures is not entitled to the benefit of a new statute of limitations period commencing from the date the re-sentencing judgment became final." *Rainey*, 443 F.3d at 1324. The *Rainey* court focused on the fact that the petitioner before it had challenged only his original judgment of conviction. That is the case here. Jennings contends in his petition that he (1) received ineffective assistance of counsel when his trial attorney advised him to plead guilty to avoid the death penalty when, as a 14-yr.-old, he was ineligible for the death penalty, and (2) he did not knowingly and intelligently waive his statutory rights to a juvenile transfer hearing. These are matters which are germaine only to the original sentence imposed in 1995. The court does not find that the review of that sentence required by the provisions of the Kentucky Uniform Juvenile Code upon the attainment of the age of eighteen forestalls the finality of that judgment of conviction and sentence. The one-year statute of limitations therefore expired April 24, 1997 and the petition before us was properly found to be time-barred.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the objections of the petitioner, Michael Jennings,

are **OVERRULED**, the Findings of Fact, Conclusions of Law, and Recommendation are **ACCEPTED AND ADOPTED IN THEIR ENTIRETY**, and the petition for writ of habeas corpus is **DISMISSED WITH PREJUDICE**. There being no just reason for delay in its entry, this is a final order.

**IT IS SO ORDERED.**